UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

BERNARD ANDREW ROTHMAN,

Debtor.

Case No. 19-15963 (JNP)

Chapter 7

## OPINION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

The Debtor received a Chapter 7 discharge in 2019, and this case was closed in September 2020. Four and a half years later, the Debtor, proceeding pro se, filed a: (1) motion to reopen the case (the "Motion to Reopen"); (2) motion to reinstate the stay (the "Motion to Reinstate the Stay") with respect to U.S. Bank Trust NA as Trustee of the Cabana Series IV Trust (together with its predecessors in interest, "Secured Creditor") and the real property located at 2823 Schooner Lane, Hammonton, New Jersey (the "Property"); and (3) motion to stay eviction (the "Motion to Stay Eviction" and collectively, the "Motions"). Dkt. Nos. 147, 148, 154. Secured Creditor objected to the Motions. Dkt. Nos. 151, 153, 158. On May 6, 2025, the Court held a hearing on the Motions (the "May 6 Hearing") and took the Motions under advisement. For the reasons discussed below, all three Motions will be denied.

## Background

The Debtor initially filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code on March 25, 2019 (the "Petition Date").[1] A month later, he voluntarily converted the case to Chapter 7. After conversion, Secured Creditor filed a motion for stay relief with respect to the

---

[1] While the Debtor's case was pending, the Debtor's wife, Michele D. Rothman, filed her own bankruptcy case. Secured Creditor obtained an order granting in rem relief from the automatic stay against the Property pursuant to section 362(d)(4) because of bad-faith tag-team filings by her, her father, and the Debtor. See In re Rothman, 23-15073-ABA, Dkt. No. 87 (Bankr. D.N.J. 2023).

Property. Dkt. No. 65. The Debtor objected, arguing Secured Creditor was not the holder of the debt under the relevant loan documents and that the mortgage was improperly assigned to Secured Creditor.[2] Dkt. No. 69. After a hearing, this Court granted Secured Creditor relief from the automatic stay. Dkt. No. 78.

The Debtor appealed the order granting Secured Creditor stay relief. Dkt. No. 81. The Debtor also sought a stay pending appeal. Dkt. No. 88. In his motion to impose the stay pending appeal, the Debtor made the same arguments he made in his objection to stay relief. Id. This Court denied the Debtor's motion for a stay pending appeal, and the District Court affirmed the Bankruptcy Court's order granting relief from the stay. Dkt. Nos. 99, 143. The Debtor also requested a stay pending appeal in the District Court which was denied as moot. Dkt. No. 144.

The Debtor then filed an adversary proceeding seeking to expunge Secured Creditor's claim for similar reasons he opposed stay relief (the "Adversary Proceeding").[3] See Rothman v. Wells Fargo Bank, N.A., Adv. No. 19-2043-JNP (Bankr. D.N.J. 2019). The Court granted Secured Creditor's motion to dismiss the Complaint with prejudice on January 7, 2020. Adv. Dkt. No. 38. The Debtor appealed the dismissal, and the District Court affirmed this Court's ruling. Adv. Dkt. Nos. 40, 48.

The Chapter 7 Trustee designated the case as a "no asset" case and sought to abandon the Property. Dkt. No. 117. The Debtor objected, and, after a hearing, the Court overruled the objection

---

[2] The Debtor also argued that Secured Creditor's motion for stay relief should be denied because Secured Creditor did not file a proof of claim, and there was an adversary proceeding pending against it. Dkt. No. 69.

[3] Specifically, the Complaint alleged: (1) Secured Creditor filed an affidavit containing untrue statements about amounts due on the loan; (2) the loan was improperly assigned and transferred to Secured Creditor; (3) the loan documents were improperly modified; (4) Secured Creditor lacks standing because no proof of claim was filed in the Chapter 7 case; and (5) Secured Creditor failed to disclose the real party in interest on the loan. Adv. Dkt. No. 1 ¶¶ 5, 7, 10, 12, 22, 27.

and approved abandonment. Dkt. Nos. 125, 139. The Debtor appealed and both the District Court and the Third Circuit affirmed the Bankruptcy Court's order. Dkt. No. 145. The Debtor received a discharge on September 12, 2019, and the case closed a year later.[4] Dkt. No. 120.

On March 13, 2025, nearly five years after the case closed, and on the same day as a scheduled Sheriff's sale of the Property, the Debtor filed the Motion to Reopen.[5] Dkt. No. 147. The Motion to Reopen is brief and simply states that the Debtor would like to reopen the case so he can: (1) reimpose the stay to prevent the sale of the Property, and (2) reconvert the case to Chapter 13. Id. Eleven days later, and after the Sheriff sale was held, the Debtor filed the Motion to Reinstate the Stay. Dkt. No. 148. Then on April 21, the Debtor filed the Motion to Stay Eviction. Dkt. No. 154.

The parties agree that the Property was sold at a Sheriff's sale despite the Debtor's Motion to Reopen having been filed. Dkt. No. 151 ¶ 7; May 6 Hearing at 00:32:13. In fact, both parties submitted copies of the Sheriff's Deed as an attachment to various pleadings. See Dkt. Nos. 151, 159.

The Motion to Reinstate the Stay argues that the stay should be reimposed because the Debtor's financial situation improved. The motion does not describe how his financial situation has changed or provide any other basis to reimpose the stay almost six years after Secured Creditor was granted stay relief. Secured Creditor filed a response arguing the stay should not be imposed because (1) the Property was sold; (2) the Property was abandoned by the Trustee; (3) the Property is subject an order granting in rem relief from the stay entered in Michelle Rothman's case; (4) a

---

[4] The delay in closing the case was due to the Debtor's appeal of the order allowing abandonment pending before the District Court. That appeal was dismissed on July 24, 2020. See Dkt. No. 145.

[5] The mere filing of the Motion to Reopen did not itself reopen the case, impose the automatic stay, or afford the Debtor any type of relief. Furthermore, even if the case were reopened, the stay would not be reimposed for the reasons outlined herein.

3

challenge to Secured Creditor's standing as mortgage holder is collaterally estopped; and (5) the Debtor offers no proof of any changed circumstances to justify lifting the in rem order and reimposing the stay.

The Motion to Stay Eviction argues that Secured Creditor should be stayed from ejecting the Debtor from the Property because the Motions are currently pending in this Court. Secured Creditor filed an objection to the Motion to Stay Eviction, asserting (1) the motion is moot if the Court grants the Motion to Reinstate the Stay, and (2) if the Court denies the Motion to Reinstate the Stay, the Motion to Stay Eviction should be denied because the Court would lack jurisdiction to stay the ejectment, and the Debtor failed to meet the standard for a preliminary injunction.

At the May 6 Hearing, the Debtor offered additional bases to reopen the case. First, he argued the case should be reopened because he wants to add additional unsecured creditors to his schedules so those claims can be discharged. Then, he argued the case should be reopened to address his concerns about the police allegedly interfering with his bankruptcy. The Debtor explained that on April 26, 2025, police came to the Property in response to a report that squatters were present. The Certification filed with the supplemental documentation provided after the hearing further explains that the police then arrested someone living at the Property due to an outstanding warrant. The Debtor described the incident as an interference with his bankruptcy and the pending Motions.

Next, the Debtor argued the case should be reopened because the Sheriff's Deed is invalid. He asserted that on the day of the Sheriff's sale, there was no record of the deed at the clerk's office. The Debtor submits the deed was backdated to reflect a March 13 sale date, and that the sale did not actually occur at that time. According to the Debtor, he knows the Property was not sold on March 13 because on that day, the clerk told him "the bank owns the property."

The Debtor reiterated his argument that "there are still problems with the mortgage." He asserted the same issues he has already argued in this Court and state court about the validity of the mortgage and its assignment. The Debtor also stated that he proposed to Secured Creditor conducting a short sale of the Property in lieu of a foreclosure sale, but Secured Creditor rejected the offer.

Finally, the Debtor brought documents to the May 6 Hearing that he asked the Court to consider. Despite the deadline for the Debtor to file additional documents having passed, the Court allowed the Debtor to file those documents on May 6 immediately following the May 6 Hearing.[6] See Dkt. No. 159. At the hearing's conclusion, the Court took the Motions under advisement. The Court considers the record closed after the Debtor filed documents on May 6. Then, without Court permission, the Debtor filed additional documents on May 7, 8, and 20, 2025. Dkt. Nos. 160-63. The Court does not consider those documents as part of the record. Nevertheless, the Court has reviewed those submissions and does not require a further response from Secured Creditor.[7]

Because there is no basis to reopen the case, the Motion to Reopen will be denied. Moreover, because the Court will not reopen the case, the Motion to Reinstate the Stay and Motion to Stay Eviction will also be denied.

### Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334, 157(a), (b). Venue is proper in this Court under 28 U.S.C. § 1408. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G).

---

[6] By Text Scheduling Order dated April, 24, 2025, the Court set May 2 as the deadline for the Debtor to file any replies to the Motions. The Court allowed the late filing mindful that courts should afford leniency to pro se parties. See, e.g., Erickson v. Pardus, 55 U.S. 89, 94 (2007).

[7] The documents filed on May 7, 8, and 20 reiterate arguments made in the Motions, including that: (a) the foreclosure was not appropriate; and (b) Secured Creditor's actions related to obtaining possession of the Property were illegal. All of these arguments are discussed in this Opinion, have been resolved by the state court, or are properly raised in the state court, not this Court.

5

**Discussion**

<u>The Motion to Reopen is Denied</u>

The Motion to Reopen states two bases for reopening the case: (1) to impose the automatic stay, and (2) to reconvert the case to Chapter 13. At the May 6 Hearing, the Debtor submitted additional bases to reopen the case: (1) to add additional unsecured creditors so their claims can be discharged; (2) to address alleged police interference with the bankruptcy; (3) to address the allegedly invalid Sheriff's Deed; and (4) to relitigate the validity of Secured Creditor's mortgage and assignment. None of these are bases to reopen the case.

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The burden is on the moving party to demonstrate cause to reopen a bankruptcy case. In re Geo Specialty Chems. Ltd., 577 B.R. 142, 179 (Bankr. D.N.J. 2017). "The right to reopen a bankruptcy case depends upon the circumstances of the individual case and the decision whether to reopen is committed to the bankruptcy court's discretion." Id. (citing In re Mattera, 203 B.R. 565, 568 (Bankr. D.N.J. 1997)).

Initially, there are no assets to be administered in this case. The Trustee abandoned the Property in 2019. As such, it is no longer property of the estate. See In re Lyn, 483 B.R. 440, 451(Bankr. D. Del. 2012) ("By operation of law, abandoned property is no longer property of the estate.") (citing Fields v. Bleiman, 267, Fed. App'x 144, 146 (3d Cir. 2008)). Thus, this is not a basis to reopen the case.

Additionally, the Court need not reopen the case to allow the Debtor to add unsecured creditors. Under Judd v. Wolfe, 78 F.3d 110, 113–14 (3d Cir. 1996), it is not necessary to reopen a no asset Chapter 7 case to add creditors if statutory exceptions to discharge do not apply. Thus, this is not a basis to reopen the case.

6

The remaining grounds to reopen a case are to accord the debtor relief and for other cause. When assessing whether to reopen a case on these bases, courts consider a myriad of nonexclusive factors such as (1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of non-bankruptcy courts, such as state courts, to entertain the claims. Redmond v. Fifth Third Bank, 624 F.3d 793, 798 (7th Cir. 2010) (citing In re Antonious, 373 B.R. 400, 405–06 (Bankr. E.D. Pa. 2007)). If reopening a case would be futile, then the motion to reopen should be denied. Geo Specialty, 577 B.R. at 179.

Here, the Debtor has not met his burden to show cause to reopen his case. As noted above, the Court should extend leniency to pro se parties and construe their pleadings liberally. See, e.g., Erickson, 55 U.S. at 94. However, even with the most liberal construction, the Motion to Reopen fails to allege cause to reopen the case.

The first factor, the length of time since the case has closed, weighs in favor of not reopening the case because a significant amount of time has passed since the case closed and the Debtor received his discharge. Moreover, Secured Creditor obtained stay relief almost six years ago. At that time, this Court considered and rejected the Debtor's contentions. On September 12, 2019, the Debtor obtained a discharge, and the case closed a year later. During the nearly five years that the case has been closed, and six years since the Debtor received his discharge, Secured Creditor has continued with its foreclosure action, and the Property was sold at a Sheriff's sale. Reopening the case now would unduly prejudice Secured Creditor. The amount of delay under these circumstances is excessive, especially for the ultimate relief requested. Therefore, this factor weighs decidedly against reopening the case.

The next factor assesses whether the Debtor would be entitled to relief if the case were reopened. This factor also weighs against the Debtor because the history of this case reveals that

7

the Debtor does not have a valid basis to impose the stay upon Secured Creditor or to reconvert the case to Chapter 13.

Since this Court granted stay relief, the Debtor has appealed nearly every decision related to the Property in the state and federal courts contesting Secured Creditor's foreclosure action. The Debtor continued to offer the same arguments about the validity of the debt in state court, his Adversary Proceeding, five appeals, and motion for a stay pending appeal. Each time, his claims were evaluated and rejected. Thus, reopening the case would be futile because the Debtor has not alleged any facts to show he might be successful if the case were reopened.

Additionally, reopening the case so the Debtor can convert back to Chapter 13 would be futile for two reasons. First, the five-year window for the Debtor to complete a plan has passed. See 11 U.S.C. §§ 1322(d), 1326(a) (limiting the length of a Chapter 13 Plan to five years and requiring payments to begin no later than thirty days after the Petition Date); In re Scarborough, 457 Fed. App'x 193, 201 (3d Cir. 2012).

Second, reconversion is not appropriate under the circumstances. Under section 706, a "debtor may convert a case under [Chapter 7] to a case under Chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). It is well settled that a debtor does not have an automatic right to reconvert a case back to Chapter 13 after the case previously converted from Chapter 13 to Chapter 7. See In re Andrews, 613 B.R. 896, 897 (Bankr. E.D. Mich. 2020) (collecting cases where courts rejected debtor's attempt to reconvert). Some courts use their discretion to permit reconversion after the debtor makes a showing of good faith or that reconversion is otherwise warranted, while other courts interpret section 706(a) as a complete bar against a debtor's ability to reconvert. Compare In re Masterson, 141 B.R. 84, 87 (Bankr. E.D. Pa. 1992) (recognizing a court's discretion to permit reconversion under narrow circumstances) with In re McLawhorn, 2014 WL 4948120, at *2

(Bankr. E.D.N.C. Oct. 2, 2014) (holding that reconversion is strictly prohibited under section 706(a)).

The Court need not determine which approach is appropriate, because even if this Court could use its discretion in deciding whether to permit reconversion to Chapter 13, the Debtor has not alleged facts showing that reconversion is appropriate. The Debtor has not provided any basis as to why reconversion would be in good faith or otherwise warranted. Therefore, this factor also weighs decisively against reopening the case.

The final factor considers the availability of non-bankruptcy courts to address the Debtor's claims - this factor also weighs in favor of not reopening the case. As previously noted, this Court and the District Court have already evaluated and rejected the Debtor's assertions related to whether the stay should be in effect. Moreover, the state courts have evaluated the Debtor's asserted defenses to foreclosure and rejected them. Nevertheless, if the Debtor believes there is a legitimate basis to stop (or reverse) the foreclosure action, that claim should be brought in state court. At this point, there is no avenue for relief for the Debtor seeks in this Court.

Additionally, in his supplemental filings, the Debtor continues to assert defenses to Secured Creditor's foreclosure action, and he cites N.J.S.A. 46:56A-11 and the 14th Amendment of the United States Constitution as support. However, the doctrine of collateral estoppel prohibits the Debtor from relitigating the validity of Secured Creditor's mortgage and assignment. See Hoffman v. Hoffman, 2020 WL 7392898, at *2 (N.J. Super. Ct. App. Div. Dec. 17, 2020). Even if the Debtor failed to raise these statutory and constitutional arguments in the previous proceedings, he is still barred from asserting them now because the underlying issue has not changed, and it has already been decided. See Rajaskaran v. Crandall, 460 F. Supp. 3d 1269, 1276 (M.D. Fla. 2020); Applied Med. Res. Corp. v. U.S. Surgical Corp., 352 F. Supp. 2d 1119, 1126 (C.D. Cal. 2005).

Furthermore, the automatic stay would not apply to Secured Creditor because (1) the Property is no longer property of the estate and (2) the Debtor received a discharge. See 11 U.S.C. § 362(c)(1), (2). A discharge operates as an injunction against the collection of a debt from a debtor personally. Id. § 524(a)(2); see also In re Holloway, 81 F.3d 1062, 1063 (11th Cir. 1996). But a discharge does not prevent a secured creditor from collecting its claim from its collateral. See 11 U.S.C. § 524(a)(2); In re Pierce, 29 B.R. 612, 614 (Bankr. E.D.N.C 1983) In re McNeil, 128 B.R. 603, 607 (Bankr. E.D. Pa. 1991); In re Berry, 85 B.R. 367, 369 (Bankr. W.D. Pa. 1988).

The fact that the Debtor received a discharge does not eliminate the existence of the Secured Creditor's claim, and it does not prevent Secured Creditor from pursuing collection efforts against the Property. The Motion to Reopen does not provide a reason why the Secured Creditor should not be permitted to pursue its collateral. Furthermore, both parties acknowledge that the Property was sold at a Sheriff's sale and ejectment efforts have begun. See Dkt. Nos. 148, 151, 154. As such, there is no basis to reopen the case related to the automatic stay.

Therefore, all of the factors fall against reopening the case, and the Motion to Reopen must be denied.

As previously noted, at the May 6 Hearing the Debtor made additional arguments for why the case should be reopened. None of which are persuasive. Regarding his assertion that the case should be reopened due to police interference, this is not a valid basis to reopen the case. The Debtor asserted that the police arrived at the Property on April 26 - over a month after the Property was sold. The Debtor takes issue that someone (presumably Secured Creditor) reported squatters being at the Property. But this is not a basis for relief from this Court. The alleged issues regarding the police, arrest warrants, and ejectment are appropriately brought in the state court.

The Debtor also argues the case should be reopened because he believes the Sheriff's Deed is invalid. However, the Debtor conflates the date the Sheriff's Deed was executed (thus transferring title to the Property) with the date it was recorded. The Debtor contends he knows the sale did not happen on March 13 because the clerk did not have a record of the deed and told him that Secured Creditor owned the Property. While it may be true that the county clerk's office had no record of the deed at the time because it was not yet recorded, a deed does not need to be recorded to constitute a valid transfer. See N.J.S.A. 46:3-13; H.K. v. New Jersey Dept. of Human Servs., 877 A.2d 1218, 1227-28 (N.J. 2005). More importantly, if the Debtor disputes the validity of the Sheriff's sale, that concern should be brought in state court. Therefore, the Debtor's additional arguments raised at the May 6 Hearing do not provide a basis to reopen the case, and the Motion to Reopen will be denied.

## The Motion to Reinstate the Stay Is Denied

The Motion to Reinstate the Stay is denied as moot because the case will not be reopened. The Motion to Reinstate is also moot because the Sheriff sale was held eleven days prior to the Debtor filing the Motion to Reinstate Stay.[8] Because the sale went forward before the Motion to Reinstate the Stay was filed or considered, there is no basis to reimpose the stay.

Even if the Motion to Reinstate the Stay was not moot, it would be denied. To be successful, the Debtor would have to show certain factors weigh in favor of imposing the automatic stay. Pursuant to its inherent powers under section 105 of the Bankruptcy Code, a court may reinstate the automatic stay if the movant can show (1) substantial likelihood of success on the merits; (2) irreparable harm to the movant; (3) harm to the movant that outweighs harm to the nonmovant;

---

[8] The Debtor filed the Motion to Reopen thirty minutes prior to the Sheriff sale. Conceivably the Debtor could have sought to impose the stay at a hearing related to that motion, but he did not file an application to shorten time or otherwise notify the Court that the Sheriff's sale was imminent. The Court notes, that even if the Debtor sought and obtained an emergency hearing, the ultimate relief of imposing the stay would have been denied for all the reasons cited herein.

and (4) injunctive relief would not violate public interest. In re Wedgewood Realty Grp., Ltd., 878 F.2d 693, 701 (3d Cir. 1989); see also In re Ganim, 2007 WL 880598, at *5 (Bankr. D.N.J. Mar. 21, 2007); In re Indep. Mgmt. Assocs., Inc., 108 B.R. 456, 463 (Bankr. D.N.J. 1989).

The Debtor failed to demonstrate how any of these factors fall in his favor. For the first factor, the Debtor has failed to show any likelihood that he could successfully reorganize. Again, even if the Debtor could reconvert, the five-year window for him to complete a plan has passed. Additionally, both the Secured Creditor and Debtor acknowledge that the Property has already been sold, and the Debtor received his Chapter 7 discharge. At this point, it is impossible for the Debtor to further reorganize or provide a means to repay this debt. Therefore, the first factor weighs against imposing the stay.

The second factor, whether there will be irreparable harm to the Debtor, also weighs against imposing the stay because the Debtor has not pointed to any harm he would suffer if the stay is not imposed. The purpose of the stay would be to halt the foreclosure, presumably so the Debtor can challenge the Secured Creditor's mortgage. However, the state courts have already determined that Secured Creditor's mortgage and assignment are valid. Thus, the Debtor would not suffer any harm without a stay. Furthermore, the Debtor would suffer no harm without a stay because, the Property has been sold and the Debtor no longer has an ownership interest in the Property. Therefore, the second factor weighs strongly against imposing the stay.

For similar reasons, the third factor also weighs against imposing the stay. Secured Creditor would suffer harm if the stay were reimposed. The Debtor has exercised his right to litigate Secured Creditor's foreclosure action for years, but he lost. The Property has been sold and Secured Creditor is in the process of obtaining possession. Imposing the stay at this point would unduly prejudice Secured Creditor without reason. Therefore, this factor weighs against imposing the stay.

12

The final factor considers whether imposing the stay would violate public interest - it would. Secured Creditor is now the owner of the Property, yet the Debtor remains in possession. It is against public policy to allow a party without rights to a property to remain in it indefinitely. Moreover, it is against the public interest to allow debtors to use the bankruptcy stay for no other purpose but to halt their creditors. See In re King, 2023 WL 4606987, at *6 (Bankr. D.N.J. July 18, 2023). The Debtor has not shown any purpose for reimposing the stay other than to thwart Secured Creditor, which he admits in the Motion to Reopen. See Dkt. No. 147. Therefore, this factor weighs against imposing the stay.

As such, even if the Motion to Reimpose the Stay was not moot, the Debtor has failed to allege facts to meet his burden to show a basis to reinstate the stay, and it would be denied.

### The Motion to Stay Eviction is Denied

Although the Motion to Stay Eviction is also moot because the case will not be reopened, it would be denied if the Court considered it. Similar to the Motion to Reinstate the Stay, the Motion to Stay Eviction seeks to enjoin Secured Creditor from ejecting the Debtor from the Property. Secured Creditor argues that the Court lacks jurisdiction to stay the ejectment proceeding because doing so would have no effect on the administration of the estate.

Bankruptcy jurisdiction extends to four types of proceedings: (1) cases "under" title 11, that is, the bankruptcy code; (2) proceedings "arising under title 11;" (3) proceedings "arising in" a bankruptcy case; and (4) proceedings "related to" a bankruptcy case. In re Exide Techs., 544 F.3d 196, 205 (3d Cir. 2008) (citing 28 U.S.C. § 1334(b); In re Combustion Eng'g, Inc., 391 F.3d 190, 225 (3d Cir. 2005)). The first three categories are "core" proceedings while the fourth category, "related to" proceedings, are "non-core" proceedings. Id. (citing Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999)).

13

Congress set forth a list of circumstances that constitute a core proceeding in a bankruptcy case. See 11 U.S.C. § 157. Conversely, non-core proceedings are not statutorily defined. Instead, courts have explained that "[n]on-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless 'related to' a bankruptcy case." Halper, 164 F.3d at 837.

The Third Circuit articulated the test for finding "related to" jurisdiction in Pacor, Inc. v. Higgins, and stated that an action is "related to" a bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d 984, 994 (3d Cir. 1984) (emphasis added). While the wording of the Pacor test is broad, "related to" jurisdiction is limited. W.R. Grace & Co., 591 F.3d at 171 (citing Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc., 502 U.S. 32, 40 (1991) (noting the "limited authority" Congress has vested in the bankruptcy courts through related-to jurisdiction)). The key portion of the Pacor test is that the outcome of the suit in question, could have an impact on the bankruptcy estate "without the intervention of yet another lawsuit." In re Fed.-Mogul Glob., Inc., 300 F.3d 368, 382 (3d Cir. 2002).

Here, the Court lacks jurisdiction to stay Secured Creditor's ejectment proceeding because Secured Creditor has already obtained relief from the stay with respect to the Property. In addition, the Trustee abandoned the Property, and the Property was sold at a Sheriff's sale. Thus, the Property serves no benefit to the estate, and the Debtor no longer has an ownership interest in the Property. Accordingly, staying the ejectment proceeding would have no effect on the administration of the bankruptcy case.

Even if the Court had jurisdiction to stay the ejectment proceeding, the Motion to Stay Eviction would be denied because the Debtor has failed to demonstrate that a preliminary injunction is warranted.[9]

To successfully stay the ejectment proceeding, the Debtor would have to prove he is entitled to a preliminary injunction by satisfying the following factors.

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Only if the first two factors of this standard are satisfied must a court proceed to consider the third and fourth factors. In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize.

In re Union Trust, 460 B.R. 644, 660 (Bankr. E.D. Pa. 2011) (quotations and citations omitted). These factors mirror those to reinstate the stay as discussed previously, so the analysis is the same. Again, the Debtor has failed to allege any facts to demonstrate that any of these factors weigh in his favor. In addition to the rationale for denying a stay discussed above, the factors to be considered for a Motion to Stay Eviction weigh against granting the Debtor relief for the reasons that follow.

The first factor weighs against staying the ejectment because, as discussed above, the Debtor cannot successfully reorganize. Further, the Debtor already received his Chapter 7 discharge. Therefore, the Debtor is unable to further reorganize or discharge his debts at this point, and this factor weighs against staying the ejectment proceeding.

The second factor assesses whether the Debtor would be irreparably harmed if the ejectment proceeding is not stayed. Again, the Debtor fails to demonstrate what harm he would suffer - let alone irreparable harm - if the ejectment proceeding is not stayed. The Debtor

---

[9] Moreover, requests for injunctive relief should be sought by filing an adversary proceeding, not by motion practice. See FED. R. BANKR. P. 7001(g).

15

acknowledges that the Property was sold. Other than his contentions about the mortgage assignment that have already been considered and rejected, the Debtor does not offer a basis why he would be irreparably harmed or why Secured Creditor should not be allowed to continue its collection from its collateral. Thus, this factor weighs against staying the ejectment proceeding.

While the Court need not consider the last two factors because the first two are not satisfied, I will do so for the sake of completeness. The third factor also weighs against staying the ejectment proceeding. As previously explained, declining to stay the ejectment would not harm the Debtor, but would prejudice Secured Creditor because it would yet again be forced to stop its collection efforts and respond to claims that have been repeatedly considered and rejected in the state court. As previously explained, there is no avenue for relief for the Debtor in this Court. Thus, staying Secured Creditor's collection efforts would be futile. Therefore, this factor weighs against staying the ejectment proceedings.

The final factor - whether granting preliminary relief would be in the public interest - fails for the reasons discussed above.

## Conclusion

For all the reasons previously explained, the Motions are denied.

Dated: May 22, 2025

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE